**In re Johnny SIMMONS, Debtor.**

**No. 05–92328–JB.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 8, 2006.

Stanley J. Kakol, Jr., Esq., Atlanta, GA, for Debtor.

Mary Ida Townson, Esq., Atlanta, GA, Chapter 13 Trustee.

Lynn Wood, Esq., Atlanta, GA, for Creditor Washington Mutual Bank.

### ORDER

JOYCE BIHARY, Bankruptcy Judge.

This Chapter 13 case came before the Court on May 9, 2006 on the Chapter 13 Trustee's motion to reconvert this case to a case under Chapter 7 and on the reset hearing on confirmation of debtor's Chapter 13 plan (Docket # 59). Daniel L.

Gibbs appeared for the Chapter 13 Trustee. Debtor and debtor's counsel, Stanley Kakol, were present, as was Lynn Wood, who appeared on behalf of Washington Mutual Bank, F.A. ("Washington Mutual"). After hearing arguments of counsel and carefully considering the record of this case, the Court concludes that debtor has not proposed a confirmable plan in this case and it is appropriate to grant the motion to convert this case back to a case under Chapter 7. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).

This case has been pending for more than a year. The debtor has had three lawyers. Although the debtor has assets with which creditors could be paid if the assets were liquidated, the debtor has attempted to retain those assets by proceeding under Chapter 13. The problem is that debtor has not been able to propose a confirmable plan and has not been able to keep plan payments current with the Chapter 13 Trustee. Unfortunately, this case has run its course and must be reconverted back to a Chapter 7 case so that the Chapter 7 Trustee can proceed to liquidate some of the assets and pay creditors.

This case began as a Chapter 7 case filed by the debtor through counsel James Morton on April 5, 2005. Edwin K. Palmer was appointed as the Chapter 7 Trustee. Attorney Schyler Elliott filed a notice of appearance on behalf of the debtor on May 31, 2005, but Mr. Elliott sought permission to withdraw as counsel, and the Court entered an Order on July 11, 2005 granting Mr. Elliott's motion to withdraw as counsel.

The debtor filed a *pro se* motion to convert his case to a Chapter 13 case in June of 2005, and that matter came on for hearing on July 13, 2005. The debtor was present at the hearing, but was not represented by counsel at that time. The Court

entered an Order on July 18, 2005, giving the debtor until August 13, 2005 to file the required schedules, statement of financial affairs, and a Chapter 13 plan. The Order provided that if the papers were filed, then the Court would consider whether the debtor was qualified to proceed under Chapter 13. The debtor filed schedules and a Chapter 13 plan in August of 2005, but the line in the plan for the amount of the plan payment was left blank. On August 17, 2005, debtor filed a letter indicating that he was in the process of seeking new counsel to represent him.

At a hearing on September 27, 2005, scheduled on debtor's motion to convert the case from Chapter 7 to Chapter 13 and on the United States Trustee's request for an extension of time in which to file an objection to discharge, the debtor appeared with a new attorney, Stanley Kakol. James Bone was present as the Chapter 13 Trustee, and James Morawetz was present representing the United States Trustee. Counsel announced that a consent order would be presented on the United States Trustee's request for an extension of time to file an objection to discharge, and debtor's new counsel requested a reset of the hearing on debtor's motion to convert the case to a Chapter 13 case. The Court granted the request, and debtor's motion to convert the case to a Chapter 13 was reset for October 11, 2005.

At the October 11, 2005 hearing, Stan Kakol appeared on behalf of the debtor. After hearing from Mr. Kakol and other counsel present, the Court concluded that the motion to convert to a Chapter 13 could be granted and directed Mr. Kakol to prepare an order granting the motion to convert. However, Mr. Kakol failed to submit the order, and on November 14, 2005, the Court entered an Order directing Mr. Kakol to either submit the order con-

verting the case within five days or the Court would deny the motion to convert. Mr. Kakol finally prepared the order of conversion, and the Court entered the Order on December 2, 2005 granting debtor's motion to convert the case to one under Chapter 13.

The confirmation hearing was then set by order dated December 2, 2005, for February 7, 2006, giving debtor and counsel two months to file and fund a confirmable plan. At the February 7, 2006 hearing, neither debtor nor debtor's counsel appeared. The Chapter 13 Trustee announced that the confirmation hearing should be reset for February 14, 2006, indicating that debtor might be reconverting the case to a case under Chapter 7 rather than seeking confirmation of a chapter 13 payment plan.

At the February 14, 2006 hearing, Mr. Kakol appeared with the debtor, and the Chapter 13 Trustee was present. When the calendar was called, the parties announced that they were ready to proceed. However, when the matter was reached, the Chapter 13 Trustee announced that he had met with Mr. Kakol and the debtor and had agreed to another reset confirmation hearing, because debtor had indicated that he would be surrendering certain properties in Mississippi to the appropriate taxing authority and that there was a possibility that the case would be reconverted to a case under Chapter 7. The Chapter 13 Trustee further announced that he intended to file his own motion to reconvert the case back to a case under Chapter 7.

The Chapter 13 Trustee filed the instant motion to reconvert the case back to Chapter 7 on February 22, 2006. The primary ground for the Chapter 13 Trustee's motion to reconvert the case is the allegation that unsecured creditors will receive more in a Chapter 7 liquidation than they will under the Chapter 13 plan proposed by the debtor. *See* 11 U.S.C. § 1325(a)(4). The reset confirmation hearing and the Chapter 13 Trustee's motion to reconvert the case back to a case under Chapter 7 were set for March 23, 2006. Three days before the hearing, debtor filed amendments to the Chapter 13 plan and some amended schedules. Paragraph 1 of the amendment to the plan set the payments from the debtor to the Chapter 13 Trustee at $1,887.00 per month.

Throughout the case, Washington Mutual has sought relief from the automatic stay on property located at 8576 Timberlake Trail, Riverdale, Georgia (the "Property"). Early in the case, on May 9, 2005, Washington Mutual filed a motion, and the Chapter 7 Trustee and Washington Mutual had entered into a consent order in August of 2005 giving the Chapter 7 Trustee ninety (90) days to sell the Property, recognizing that there was equity in the Property which could be used to pay unsecured creditors. On October 19, 2005, Washington Mutual filed an affidavit to the effect that the 90 days had passed and the Chapter 7 Trustee had not filed a motion to sell the Property. Washington Mutual sought an order granting relief from the automatic stay. However, since debtor had requested a conversion of the case to Chapter 13 with the understanding that the arrearage would be paid to Washington Mutual through a Chapter 13 plan, the automatic stay was not lifted.

On February 13, 2006, Washington Mutual filed a motion for an entry of an order granting it relief from the automatic stay, and the matter was set for a hearing on February 28, 2006. Debtor and Mr. Kakol appeared at that hearing and Washington Mutual was represented by Lynn Wood. The parties entered into an interim consent order on March 2, 2006, requiring debtor to pay $2,800.00 to counsel for

Washington Mutual by March 14, 2006. The Order further provided that if the payment was not made, the case would be converted back to a case under Chapter 7 and the Chapter 7 Trustee would have until April 15, 2006, to file a pleading indicating whether the Trustee had any interest in the Property. Finally, the Order provided that the debtor must have a confirmable plan by the reset confirmation date of March 23, 2006 and that if a confirmable plan was not proposed by the reset confirmation date, then the Court may enter an order converting the case to a case under Chapter 7.

The case came back before the Court on March 23, 2006 on the Chapter 13 Trustee's motion to convert the case back to a Chapter 7, the confirmation hearing, and Washington Mutual's motion for relief from the automatic stay. James Bone appeared for the Chapter 13 Trustee, both debtor and his wife appeared, along with counsel Stanley Kakol, and Lynn Wood appeared for Washington Mutual. Washington Mutual announced that the debtor paid the $2,800.00 pursuant to the Court's Order entered on March 2, 2006, but the Chapter 13 Trustee announced a substantial delinquency in plan payments totaling some $4,612.00. The Trustee also announced additional objections to plan confirmation including debtor's failure to produce income tax returns for 2003 and 2004. Washington Mutual objected to plan confirmation, arguing that the plan was not feasible as the debtor was unable to make both mortgage payments and the plan payments. Washington Mutual also announced a post-petition mortgage payment delinquency in excess of $8,000.00.

Debtor's counsel argued that debtor's wife now had additional income, that few creditors had filed claims, and he asked for yet another reset date. Mr. Kakol stated that the bar date for filing claims was set

for April 18, 2006, and that while there was a large amount of scheduled unsecured debt in the case, few creditors had filed claims as of March 23, 2006. He asked to have the pending matters reset until after the April 18, 2006 claims bar date and represented that his client would be able to make a "substantial dent" in the $4,612.00 owed in plan payments to the Chapter 13 Trustee. The Court allowed the matter to be reset one more time, advising counsel and the debtor that debtor must make the monthly mortgage payments to Washington Mutual and that debtor must cure the delinquent plan payments. The Court reset the matter for May 9, 2006, and advised Mr. Kakol to file a report one week prior to May 9, 2006, setting out the status of how many claims were filed, the status of the tax returns, and an explanation of how the debtor was going to make the required delinquent plan payments.

On April 4, 2006, the Court entered an Order pursuant to the March 23, 2006 hearing requiring debtor to resume regular monthly mortgage payments to Washington Mutual and requiring the debtor to make all payments to the Chapter 13 Trustee in a timely manner. The Order further provided that the debtor must have a confirmable plan by the reset confirmation date of May 9, 2006, and that if a confirmable plan was not proposed by the reset confirmation date, then the Court could enter an order converting the case to a Chapter 7 case.

At the May 9, 2006 hearing, Daniel Gibbs, counsel for the Chapter 13 Trustee, announced that the plan payments were still delinquent and that of the payments that had come due, debtor had only paid $1,049.00, leaving a deficiency of $8,386.00. Mr. Gibbs renewed the request that the case be converted to Chapter 7 where a greater amount would be paid to unse-

cured creditors. Debtor's counsel had not filed a status report one week prior to the continued hearing as previously directed by the Court.

Debtor's counsel Mr. Kakol asked for still more time to prepare a new plan with a lower monthly payment of some $1,190.00 instead of the $1,887.00 he had proposed and filed just a few weeks earlier on March 20, 2006. He also represented that the debtor had $2,200.00 available to pay the Chapter 13 Trustee toward the delinquent plan payments. Counsel for the Chapter 13 Trustee and for Washington Mutual objected strenuously to any additional reset hearings or giving debtor any more time to propose a workable plan. They argued in favor of reconverting the case to a Chapter 7 liquidation.

■ The economics of this case are such that there is significant equity in debtor's property. The debtor's assets include a residence, some antique cars, and some real property in Mississippi. It appears that creditors could be paid a substantial portion of their claims in a Chapter 7 case if a trustee liquidated some or all of the non-exempt assets. The debtor had hoped to keep his assets and pay the creditors in a Chapter 13 plan, and the Court has given the debtor several opportunities and sufficient time to propose a confirmable plan. The case is now over one year old, and the debtor has still not filed and proposed a confirmable plan, nor is he current with the Chapter 13 Trustee on the plan that is on file. Given the inability of the debtor to propose a confirmable plan, the history of this case, and the assets available, the Chapter 13 Trustee's motion to reconvert the case to one under Chapter 7 is well-taken and must be granted.

■ It is important to note that on March 23, 2006, Mr. Kakol asked for another reset hearing on confirmation and on the motion to reconvert so that he could review claims filed after the April 18, 2006 bar date and then propose a feasible amended plan. Notwithstanding this request, which was granted, Mr. Kakol did not meet with his client after the April 18, 2006 bar date and in fact did not meet with his client until the date of the reset hearing on May 9, 2006. The debtor made no effort to file an amended plan prior to the May 9, 2006 hearing and did not bring the payments current prior to the hearing. Mr. Kakol stated that the reason he did not file an amended plan is because he planned to file one objection to a claim of some $4,000.00. He argued that he should not have to propose or fund a plan until all claims are filed, the bar date has passed, and the debtor has filed and obtained a ruling on his objection to the one claim. This argument is fallacious. The Bankruptcy Code does not give a debtor the luxury of waiting to propose and fund a plan. The Chapter 13 plan is to be filed within fifteen (15) days after the filing of a petition or after conversion to Chapter 13, and funding is to begin thirty (30) days after the plan is filed. *See* Rule 3015(b) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 1326(a).

■ Debtor's counsel is also mistaken to the extent he argues that the confirmation hearing should not be held until the Court has ruled on the one objection he filed on May 9, 2006, to a $4,000.00 claim. In this district, as in the majority of districts, the Court schedules confirmation hearings in Chapter 13 cases prior to the bar date for filing claims. This has been the standard procedure in the Northern District of Georgia for at least the past seventeen (17) years.[1] The key rationale for this procedure is to allow creditors to be paid sooner, as the Chapter 13 Trustee cannot make

---

1. While some courts in the past may have

scheduled confirmation hearings months after

distributions until a plan is confirmed. 11 U.S.C. § 1326(a)(2). While there may be special circumstances in which the court continues a confirmation hearing in order to adjudicate a significant claim, there are no such special circumstances here.

In this case, unsecured claims have been filed in the amount of some $64,788.00. The debtor has assets that, if liquidated, could pay creditors a substantial portion, if not all, of these claims. The debtor is not current with the Chapter 13 Trustee and has not proposed a feasible Chapter 13 plan. Although counsel continued to ask for more time at the May 9, 2006 hearing, there was no indication that debtor has the ability to fund a plan with monthly payments. Accordingly, the Chapter 13 Trustee's objection to confirmation is sustained, the Chapter 13 Trustee's motion to reconvert the case to a Chapter 7 case is granted, and the Chapter 13 Trustee shall turn over all funds on hand to the Chapter 7 Trustee. Debtor and debtor's counsel are directed to work with the Chapter 7 Trustee to liquidate property of the estate so that the creditors can be paid.

the case was filed so as to allow the parties time to review filed claims, whatever flexibility courts had with regard to scheduling confirmation hearings in Chapter 13 cases arguably has been eliminated by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Prior to BAPCPA, § 1324 of the Bankruptcy Code provided simply that the court shall hold a hearing on confirmation of the plan, but it did not say when the hearing should be held. BAPCPA added new subsection (b) to § 1324, requiring the confirmation hearing to be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors under § 341(a). Under Rule 3002 of the Federal Rules of Bankruptcy Procedure, with some exceptions, the bar date for filing proofs of claim in Chapter 13 cases is 90 days after the first date set for the meeting of creditors under § 341. Thus, the bar date for filing claims is 90 days after the first date set for the § 341 meeting of creditors, and a confirmation hearing is to be held between 20 and 45 days after the meeting of creditors. While it is possible in a given case that a § 341 meeting would be held, as opposed to "first set", late enough so that the confirmation hearing could take place after the bar date, it is clear that Congress now intends confirmation hearings to be scheduled and held prior to the claims bar date. The case at bar is a pre-BAPCPA case, but the amendment to § 1324 demonstrates the lack of merit in counsel's argument that confirmation hearings should take place only after all objections to claims have been heard.